# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**CHERYL L. ALLEN,** *et al.,*

    Plaintiffs,

v.                                                     Civil Action No. **3:09CV63**

**CITY OF FREDERICKSBURG,** *et al.,*

    Defendants.

## MEMORANDUM OPINION

Cheryl L. Allen and Rashid A. Mustafa, proceeding *pro se*, filed this action under 42 U.S.C. § 1983. Ms. Allen and Mr. Mustafa (collectively "Plaintiffs") allege, *inter alia*, that their constitutional rights were violated during an intrusion into Ms. Allen's home in 2007. Plaintiffs have named as defendants: the City of Fredericksburg; Thomas Tomzak, the Mayor of Fredericksburg; David Nye, the Chief of Police of Fredericksburg; Robert Wayne Hunnicutt, a detective with the Fredericksburg Police; and G. Carter, a detective with the Spotsylvania Sheriff's Department (collectively "Defendants"). Defendants have filed Motions to Dismiss to which Plaintiffs have responded. Additionally, because the Plaintiffs are proceeding *in forma pauperis*, the Court possesses independent authority under 28 U.S.C. § 1915(e)(2) to dismiss the portions of the complaint which fail to state a claim upon which relief could be granted. Plaintiffs have filed a motion for partial summary judgment to which Defendants responded. These matters are ripe for disposition. For the reasons set forth below, Defendants' Motions to Dismiss (Docket Nos. 29, 35) will be GRANTED IN PART AND DENIED IN PART and Plaintiffs' Motion for Partial Summary Judgment (Docket No. 50) will be DENIED.

## I. Motion to Dismiss Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Bell Atl. Corp.*, 550 U.S. at 556).

Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Additionally, the Court may consider the search warrant and affidavit in addressing the motions to dismiss without converting the motions to motions for summary judgment because the affidavit and search warrant were attached to the original complaint and are referenced in and integral to the amended complaint. *See Booker v. Dominion Va. Power*, 3:09cv759, 2010 WL 1848474, at *1 n.1, *3 (E.D. Va. May 7, 2010).

## II. Recitation of Relevant Allegations and Facts

### A. Events in Ohio

On November 4, 2006, authorities in Sidney, Ohio received a complaint that someone was in the parking lot of the local high school breaking into cars. The police found Mr. Mustafa sitting in a vehicle in the parking lot. The vehicle was registered to Ms. Allen. A search of the vehicle resulted in Mr. Mustafa's arrest on drug charges. The police also found a 9mm handgun in the vehicle, for which Mr. Mustafa was charged with the Ohio criminal violation of felon in possession of a firearm.

### B. Events of January 30, 2007 at Plaintiffs' Residence

On January 26, 2007, Detective Carter procured two felony arrest warrants for Mr. Mustafa for the charges of grand larceny and possession of and/or transportation of a firearm after having been convicted of a violent felony. On January 30, 2007, Detective Carter and a second detective with the Spotsylvania Sheriff's Department went to Ms. Allen's residence at 200 King Arthur's Way #204 in Stafford County, Virginia. Ms. Allen answered the door and

3

Detective Carter told Ms. Allen they were detectives with the Spotsylvania Sheriff's Department.

Detective Carter told Ms. Allen that they would like to ask her some questions. Ms. Allen

admitted the detectives to her home.

Detective Carter then told Ms. Allen that they were investigating the theft of some

medieval jewelry, which had been stolen from a carnival and sold on e-Bay. Ms. Allen asked

what that had to do with her. The following conversation then occurred:

| Carter: | Rashid Mustafa is your boyfriend. |
| Allen: | Silence. |
| Carter: | We know that he is in custody in Ohio. He was driving your car. We are investigating several crimes we believe he committed in this area. |
| Allen: | What does that have to do with me? |
| Carter: | We would like to know if you would allow us to look around. |
| Allen: | What do you mean 'look around'!? Go through my apartment!? |
| Carter: | Yes. Just a walk through; or, we could get a search warrant and turn this whole place upside down, but we'd rather not go through all of that. |
| Allen: | No you can't 'look around'! Would you let somebody come into your home and 'look around'!!? |
| Carter: | I don't have a boyfriend who's involved in criminal activity. I could have a search warrant here in a []ma[t]ter of minutes. |
| Allen: | Get the search warrant then! |

(Am. Compl. 3.)[1] Carter then feigned that he had received a call on his cell phone and told the

individual on the other end of the phone that "'she wants us to get a search warrant but I believe

she's going to cooperate.'" (*Id.* at 4; *see id.* at 11.) After the call ended, Ms. Allen asked what

would happen next. Detective Carter stated, "'We wait.'" (*Id.* at 4.) Ms. Allen asked, "'Do you

have to wait here!?'" Detective Carter replied, "'Yes.'" (*Id.*) Detective Carter then explained

that "'this other guy isn't like me, he's probably going to want to take you to jail, just don't give

---

[1] The Court will utilize the page numbers assigned to the Amended Complaint by the Court's CM/ECF system because Plaintiffs did not number all the pages of the Amended Complaint. Additionally, the Court has corrected the punctuation in the quotations to the Amended Complaint.

him a hard time when he gets here.'" (*Id.*)  Ms. Allen exclaimed, "'Take me to jail for what!?  I

ain't did sh\*\*!  Who is this other person and why would he want to take me to jail?!'" (*Id.*)

Carter explained the other individual was a detective from Fredericksburg.

About twenty minutes later, Detective Hunnicutt arrived at Ms. Allen's residence and

knocked on the door.  The second detective from Spotsylvania admitted Detective Hunnicutt to

Ms. Allen's residence.  Detective Hunnicutt looked at Detective Carter, pointed at Ms. Allen,

and asked, "'All I want to know is; is she going to jail?!'" (*Id.*)  Hunnicutt walked up to Ms.

Allen and stared at her.  Carter replied, "'No, she's agreed to be cooperative.'" (*Id.*)

Defendant Hunnicutt then told Ms. Allen that "'Rashid [is] in a lot of trouble!  I hope

you're not going to go to jail with him.'" (*Id.*)  Ms. Allen yelled, "I ain't did nothing!  Whatever

ya'll think Rashid did ain't got sh\*\* to do with me!  Ya'll want Rashid, go to Ohio and talk to

him.  I work.  I don't know why you talking about taking me to jail.  I'm not Rashid!'" (*Id.*)  Ms.

Allen began to cry.  Detective Hunnicutt said, "We'll be bringing him back here and he is going

to jail for a long time and he may take you with him." (*Id.*)  Ms. Allen then asked if she needed a

lawyer.  Detective Hunnicutt told her she did not need an attorney if she had not done anything

wrong.  Detective Hunnicutt showed Ms. Allen photos that he represented were from

surveillance cameras where Mr. Mustafa had used stolen credits cards.  Even though several

photos were obvious "'mugshots'" of Mr. Mustafa, Ms. Allen stated that she was not sure if

those photos were of Mr. Mustafa or not.  (*Id.*)  Defendant Hunnicutt became angry at Ms.

Allen's false response.

Thereafter, Detective Hunnicutt talked with Ms. Allen about her relationship with Mr.

Mustafa.  Ms. Allen told Detective Hunnicutt that she had a daughter and Mr. Mustafa was the

daughter's "father figure." (*Id.* at 5.) Ms. Allen told Hunnicutt her relationship with Mr. Mustafa began in Ohio and the two of them relocated to Virginia. Ms. Allen told Hunnicutt that they do not have any other relatives in Virginia. Detective Hunnicutt said, "'[W]e believe Rashid has been breaking into cars and that he may have brought some of the things that he stole her[e] and maybe given items to you and your daughter as gifts.'" (*Id.*) Ms. Allen exclaimed, "'Ain't nothing in here stolen.'" (*Id.*) Hunnicutt stated, "'[W]e'll see about that. If there is, you may be going to jail for accessory.'" (*Id.*) Ms. Allen yelled, "'All you seem to keep talking about is taking me to jail for what you claim you think Rashid done did! I'm not him! I work! [W]ork! [W]ork!'" (*Id.*) Hunnicutt stated, "'Don't you yell a[t] me! Sit down!'" (*Id.*) Allen yelled, "'[Y]ou keep yelling at me!'" (*Id.*) Ms. Allen began to cry again. Detective Hunnicutt made a call from his cell phone and said the warrant would be there shortly.

About ten to fifteen minutes later, a uniformed Stafford County Sheriff Deputy knocked on the door. The second Spotsylvania detective admitted the deputy. The deputy gave Ms. Allen a copy of an affidavit and a search warrant for her home. About fifty minutes had elapsed between Detective Carter's arrival at the residence and the arrival of the search warrant.

Detective Hunnicutt explained to Ms. Allen that they were only interested in the things that Mr. Mustafa had brought into the apartment. Ms. Allen asked, "'[T]hings like what? Aren't you suppose to know what you're looking for?'" (*Id.*) Hunnicutt then said, "'[I]f you are going to be difficult, I'll take whatever I want to take. Now show me where Rashid's things are!'" (*Id.*) Ms. Allen then directed the detectives to a closet in the master bedroom. Detective Hunnicutt told Ms. Allen to "'go out there and have a seat.'" (*Id.*) Ms. Allen then went back into the living room where the second Spotsylvania detective "'stood guard over' her." (*Id.*)

About an hour into the search, Ms. Allen's fourteen-year-old daughter arrived home.

Detective Hunnicutt asked Ms. Allen's daughter several questions. Detective Hunnicutt then

showed Ms. Allen a plastic freezer bag that appeared to contain a gun inside. Detective

Hunnicutt told Ms. Allen that he could arrest her for possession of a firearm. Ms. Allen stated

that she had never seen the gun before. Detective Hunnicutt told Ms. Allen to sit down and

explained that they had found the gun in one of the bags that belonged to Mr. Mustafa. Detective

Hunnicutt then showed Ms. Allen what he alleged was a robbery kit. The kit contained duct

tape, knit gloves, rope, and bandanas. Detective Hunnicutt also told Ms. Allen that he had found

a bag of marijuana in one of the drawers. Detective Hunnicutt told Allen, "'You could go to jail,

but I'm not going to arrest you. Where would that leave your daughter? But I am going to need

your full cooperation when we bring Rashid back here.'" (*Id.* at 6.) Detective Hunnicutt told

Ms. Allen she was going to "'have to testify against Rashid and say that the things we found here

were brought here by Rashid or belonged to Rashid.'" (*Id.*) Detective Hunnicutt told Ms. Allen

that she has to sign "'this'" and gave her a piece of paper which she signed because she was

afraid that if she did not, she would go to jail. (*Id.*)

Detectives Hunnicutt and Carter removed about six or seven bags of property from the

residence. Included in the items taken were "two or three knives/daggers/swords." (*Id.*)

Detective Carter also searched a storage area adjacent to the apartment. Carter removed a

black canvas bag containing a medical device Mr. Mustafa used to administer breathing

treatment for his asthma.

As the police were leaving the residence, Detective Hunnicutt pointed at a 20" Magnavox

Color Television still in the box in the living room and told Ms. Allen, "'Do not remove or open

that T.V. because I will be back to get it. If you do, I will put [you] in jail.'" (*Id.* at 7.)

## C.    Events Between January 30, 2007 and February 9, 2007

Mr. Mustafa was in custody in Ohio when the search of the apartment occurred. Mr.
Mustafa learned of the search through the mail. At Mr. Mustafa's urging, Ms. Allen contacted
Hunnicutt to inquire as to why comic books were taken. Defendant Hunnicutt told Ms. Allen
that he would come by the residence because there were some things he needed to talk with her
about. On February 5, 2007, Detective Hunnicutt "came to the plaintiffs' residence" and
returned about twenty comic books. (*Id.* at 7.) Detective Hunnicutt began to interrogate Ms.
Allen about Mr. Mustafa and told her that she had not been "'forthcoming'" with him. (*Id.* at 7.)
Detective Hunnicutt explained to Ms. Allen that Ms. Allen's coworker had lost a credit card and
suggested that Ms. Allen stole the card and gave it to Mr. Mustafa. Detective Hunnicutt alleged
that the Magnavox television in the box was purchased with the missing credit card. Detective
Hunnicutt threatened to arrest Ms. Allen and suggested that she should go to jail and a take a lie-
detector test. Ms. Allen expressed her willingness to take the test. Detective Hunnicutt declined
to follow through with his threat to arrest Ms. Allen. Detective Hunnicutt took the television and
left the apartment.

On or about February 9, 2009, Hunnicutt returned to Ms. Allen's residence. Detective
Hunnicutt returned ten more comic books to Ms. Allen. Detective Hunnicutt explained that there
was an "'item of interest'" that he intended to remove from the apartment. (*Id.*) Detective
Hunnicutt told Ms. Allen that he was interested in a black steel flashlight that they believed Mr.
Mustafa may have used to break out the windows of vehicles. Detective Hunnicutt told Ms.
Allen, "'I have been more than fair with you. I could get a search warrant and go through your
whole apartment again, but I hope that won't be necessary.'" (*Id.*) Ms. Allen, "not wanting to be
subjected to the same ordeal and believing Hunnicutt's authority, gave him the flashlight." (*Id.*)

8

### D.    Events After February 9, 2007

In October of 2007, Mr. Mustafa was returned to Virginia to face charges on fourteen felony warrants that had been sworn out against him by Detective Hunnicutt. On November 13, 2007, in the General District Court of the City of Fredericksburg, "[D]efendant Hunnicutt testified contrary to his sworn affidavit for search warrant that he has 'never had a conversation' with plaintiff Mustafa." (*Id.* at 8.) On March 4, 2008, all charges against Mr. Mustafa in the Circuit Court of the City of Fredericksburg were dismissed. Mr. Mustafa was eventually convicted of grand larceny in the Circuit Court for the County of Spotsylvania. *See Mustafa v. Commonwealth*, No. 2126-08-2, 2010 WL 87211 (Va. Ct. App. Jan. 12, 2010).

### III.  Summary of Claims

Plaintiffs claim that they are entitled to relief upon the following grounds.

Claim 1        Violations of Plaintiffs' right under the Fourth Amendment:[2]

        (a)     Hunnicutt and Carter executed a facially defective warrant. "The particularity clause of the Fourth Amendment states: '. . . the requirement that warrants shall particularly describe the things to be seized.' No item is described by this search warrant. All items are listed categorically." (Am. Compl. 9.) "The search warrant did not restrict the defendants' search, instead, it permitted an exploratory search of the plaintiffs' residence." (*Id.*)

        (b)     Carter violated Ms. Allen's rights when she demanded that Carter secure a search warrant. "Carter's presence in the plaint[i]ffs' residence after such a demand constitutes an unlawful act." (*Id.*)

---

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

| Claim 2 | | Violation of Plaintiffs' rights under the Fourteenth Amendment:[3] |
|---|---|---|
| | (a) | Hunnicutt and Carter denied Plaintiffs' equal protection of the laws. |
| | (b) | Carter and Hunnicutt deprived Ms. Allen of a protected liberty interest. "Carter and Hunnicutt deprived [Ms.] Allen of her liberty when they unlawfully occupied the residence after a specific request was made that a search warrant be obtained. [Ms.] Allen explicitly asked defendant Carter to leave while waiting for the search warrant to arrive . . . ." (*Id.*) |
| | (c) | Carter and Hunnicutt deprived Plaintiffs of protected property interests when Carter and Hunnicutt: (1) seized property under an "unlawful warrant"; (2) "seized items not included in the broad scope of the warrant"; and, (3) "failed to properly list and record every item seized." (*Id.* at 10.) |

| Claim 3 | "Plaintiffs claim that defendant Hunnicutt committed perjury in violation of 1746 of Title 28 United States Code . . . ." (*Id.*) |
|---|---|
| Claim 4 | "Plaintiffs claim that the actions of defendants Hunnicutt and Carter constitute the act of conspiracy . . . ." (*Id.* at 11.) |
| Claim 5 | "Supervisor Liability/Training Policy." (*Id.* at 12 (emphasis omitted).) The City of Fredericksburg; Thomas Tomzak, the Mayor of Fredericksburg; David Nye, the Chief of Police of Fredericksburg are liable for the actions of Detective Hunnicutt. |
| Claim 6 | "Hunnicutt's repeated threats to arrest plaintiff [Ms.]Allen as well as the attempts to 'bully' and intimidate should be viewed as the Intentional Infliction of Emotional Distress" in violation of Virginia law. (*Id.*) |

Plaintiffs demand monetary damages.

## IV. Analysis

### A. Statute of Limitations

Because 42 U.S.C. § 1983 does not explicitly provide its own statute of limitations, the

courts borrow the personal injury statute of limitations from the relevant state. *See Nasim v.*

---

[3] "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

*Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (*citing Wilson v. Garcia*, 471 U.S. 261, 266-69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01-243(A) (West 2010). Hence, Plaintiffs were required to have filed the original complaint within two years from when the underlying claims accrued. "A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, No. 3:08cv138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (*quoting Nasim*, 64 F.3d at 955).

Here, the parties acknowledged that Plaintiffs' claims accrued at the earliest on January 30, 2007. Defendants contend that the action is untimely because it was not filed until February 6, 2009. Although the Clerk did not formally file the original complaint on the Court's electronic docket until February 6, 2009, the original complaint was received by the Court on January 22, 2009. Defendants fail to explain why under such circumstances that action is barred by the statute of limitations. *See Robinson v. Doe*, 272 F.3d 921, 922-23 (7th Cir. 2001) (observing that a complaint is filed "when the court clerk receives the complaint, not when it is formally filed in compliance with all applicable rules involving filing fees and the like" (*citing Martin v. Demma*, 831 F.2d 69, 71 (5th Cir. 1987))). Accordingly, Defendants' argument that the action is barred by the statute of limitations is rejected.

It is appropriate to dispense with Plaintiffs' facially deficient claims, prior to addressing the thornier issues posed by the Fourth Amendment issues in Claims 1 and 4.

### B. Fourteenth Amendment Claims

#### 1. Plaintiffs Have Not Stated an Equal Protection Claim

In order to state a claim under the Equal Protection Clause, a plaintiff must allege facts that indicate "'that he [or she] has been treated differently from others with whom he [or she] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002) (*quoting Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Plaintiffs have not stated any facts to satisfy either of the above elements. Accordingly, Claim 2(a) will be DISMISSED WITH PREJUDICE.

#### 2. Plaintiff Allen Cannot Bring a Separate Due Process Claim Against Detectives Hunnicutt and Carter for their Continued Presence in Her Home

In Claim 2(b), Ms. Allen contends that Detectives Hunnicutt and Carter violated her right to due process when they remained in her residence even though she had made a specific request to Carter to leave until the search warrant arrived. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (*quoting Graham v. Connor*, 490 U.S. 386, 395 (1989)). "'Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,'" must be the guide for analyzing these claims." *Dent v. Montgomery Cnty. Police Dep't*, -- F. Supp. 2d -- , No. DKC 08-0886, 2010 WL 3719932, at \*8 (D. Md. Sept. 17, 2010) (*quoting Graham*, 490 U.S. at 395). Accordingly, Claim 2(b) is DISMISSED WITHOUT PREJUDICE to Ms. Allen's litigation of this claim as a Fourth Amendment claim.

### 3.    Plaintiffs Have Not Stated a Due Process Claim in Connection with the Seizure of Their Property

In Claim 2(c), Plaintiffs assert they were deprived of their property without due process of law.  Plaintiffs have not stated a viable due process claim because the Virginia Tort Claims Act, *see* Va. Code Ann. § 8.01-195.1 *et seq.* (West 2010), provided an adequate post-deprivation remedy for the unlawful and negligent deprivation of personal property. *See Phelps v. Anderson*, 700 F.2d 147, 148-49 (4th Cir. 1983); *see also Alley v. Sasser*, No. 89-6601, 1989 WL 90590, at *1 (4th Cir. Aug. 8, 1989) (dismissing plaintiff's due process claim that officer wrongfully confiscated cash from his person at the time of his arrest).  Accordingly, Claim 2(c) will be DISMISSED WITH PREJUDICE.

### C.    Perjury

In Claim 3, Plaintiff seeks to hold Hunnicutt liable under the theory that he either lied at Mr. Mustafa's preliminary hearing or in swearing out the affidavit for the search warrant.  The statute cited by Plaintiffs "merely makes unsworn statements admissible if they are signed under penalty of perjury, and it does not establish a private right of action against individuals accused of committing perjury." *Jagla v. Lasalle Bank*, 253 F. App'x 597, 599 (7th Cir. 2007) (*citing* 28 U.S.C. § 1746; *Advantor Capital Corp. v. Yeary*, 136 F.3d 1259, 1263 (10th Cir. 1998)); *Lewis v. Gupta*, 54 F. Supp. 2d 611, 619 n.12 (E.D. Va. 1999).  Plaintiffs have not adequately pled a claim for relief in conjunction with Claim 3.

Moreover, Plaintiffs have not provided sufficient factual support for their conclusory allegation that Hunnicutt committed perjury when he stated in the affidavit in support of the search warrant that he had "personal knowledge" that Ms. Allen was Mr. Mustafa's girlfriend. (Affidavit at 2.)  Therefore, the Court declines to consider this allegation as support for a

possible Fourth Amendment claim. Contrary to Plaintiffs' arguments, Hunnicutt did not

represent in the affidavit that Mr. Mustafa had told him directly that Ms. Allen was his girlfriend

and that he occasionally stayed with her. Rather, Hunnicutt represented that he had personal

knowledge of these facts and that the information had not come from an informant. Given that

Mr. Mustafa acted as the father to Ms. Allen's daughter, Mr. Mustafa and Ms. Allen had moved

to Virginia together, set up residence in Virginia together, and then Mr. Mustafa had been

arrested in Ohio in Ms. Allen's car, any minimal investigation by Hunnicutt would provide him

with personal knowledge of the facts of Mr. Mustafa's and Ms. Allen's relationship.

Accordingly, Claim 3 will be DISMISSED WITH PREJUDICE.

### D.     Municipal and Supervisory Liability

Local governmental entities, such as the City of Fredericksburg, are subject to § 1983

liability for the unconstitutional acts of their employees when the employee acts pursuant to a

municipal policy, practice, or custom. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658,

694 (1978). In addition, a municipal entity can be liable if its failure to train its employees leads

to some unconstitutional conduct. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The

failure to train must amount to "deliberate indifference to the rights of persons with whom the

[employees] come into contact." *Id* .

The Amended Complaint is insufficient to hold either the City of Fredericksburg or the

Fredericksburg Police Department liable under a failure to train theory. *Revene v. Charles Cnty.

Comm'rs*, 882 F.2d 870, 875 (4th Cir. 1989) (affirming dismissal of similar complaint). "There

are not supporting facts of even the most general nature to suggest any specific deficiencies in

training . . . , or that the incident here alleged was anything but an aberrational act by an

individual officer . . . ." *Id.*[4] Additionally, to the extent that Plaintiffs seek to hold the City of Fredericksburg or the Fredericksburg Police Department liable on the grounds that Detective Hunnicutt was acting pursuant to an unconstitutional policy, their complaint is inadequate. Plaintiffs were "obliged to identify a municipal policy or custom that caused [their] injury." *Walker v. Prince George's Cnty. Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (alteration in original) (internal quotation marks omitted) (*quoting Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)). "Critically lacking" in the Amended Complaint is any factual support for the proposition that Detective Hunnicutt's action "implemented an official government policy or custom." *Id.* (internal quotation marks omitted). Accordingly, Plaintiffs have failed to state a claim for municipal liability.

Plaintiffs also have failed to plead an adequate claim of supervisory liability. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). To plead a claim for supervisory liability, a plaintiff must allege facts that plausibly suggest:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional

---

[4] The sum of Plaintiffs' allegations with respect to Claim 5 is as follows:

Plaintiffs claim that defendant Hunnicutt explicitly burden defendants Thomas Tomzak, Mayor of the City of Fredericksburg, and David Nye, Chief, City of Fredericksburg Police Department, by the following:
1. Paragraph #4 of the Affidavit for Search Warrant states: ". . . affiant has been a Police Officer for eleven years and six months and a Detective for one year. I have received instruction in the proper recovery of physical evidence." This raises a genuine issue of fact pertaining to the City of Fredericksburg's Police Department's training of its officers, specifically with regard to the issues of this claim; that of property seizure and the search and seizure policy. Plaintiffs assert that defendant Hunnicutt's sworn statement is affirmation of "official" policy, practice and custom of the City of Fredericksburg and its police department.

(Am. Compl. 12.)

15

injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted). Plaintiffs fail to allege facts that plausibly suggest Thomas Tomzak or David Nye had any knowledge of Detective Hunnicutt's purportedly deficient conduct. Accordingly, Claim 5 will be DISMISSED WITH PREJUDICE.

### E.    Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must plead facts sufficient to satisfy the following four elements: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe." *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006) (*quoting Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)). Plaintiffs have failed to plead facts sufficient to satisfy the fourth element. In *Harris*, the plaintiff alleged emotional distress far more severe than alleged by Ms. Allen. Harris alleged the defendant's verbal abuse "caused her to break down into tears." *Id.* at 27.

> [Furthermore,] Harris alleged she suffered severe psychological trauma and mental anguish affecting her mental and physical well-being. Symptoms of her anguish include nightmares, difficulty sleeping, extreme loss of self-esteem and depression, requiring additional psychological treatment and counseling. In addition, she claims to have suffered mortification, humiliation, shame, disgrace, and injury to reputation.

*Id.* at 34. The Supreme Court of Virginia concluded that such facts were insufficient to satisfy the severity element. *Id.* The brief instances of crying alleged here by Ms. Allen and other passing emotions experienced by Ms. Allen are not sufficiently severe to support a claim for

intentional infliction of emotional distress. *Id.*; *see also Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 436 (4th Cir. 2006). Accordingly, Claim 6 will be DISMISSED.

### F.    Fourth Amendment Claims

#### 1.    Mr. Mustafa Has Standing to Raise Fourth Amendment Claims

Defendants contend that Mr. Mustafa lacks standing to raise any Fourth Amendment claims. In support of this argument, Defendants argue, " Plaintiff Mustafa was in custody in Ohio at the time of the alleged improper search of plaintiff Allen's apartment. No facts have been pled indicating it was also his apartment at the time of the search and seizure." (Defs.' Mem. Supp. Mot. Dismiss 6.) In making this argument, Defendants simply ignore that Ms. Allen and Mr. Mustafa repeatedly refer to the apartment as their joint residence. (*See e.g.*, Am. Compl. 2, 4, 7: "plaintiffs' residence".) Additionally, the Amended Complaint does not indicate that Mr. Mustafa was merely a sporadic guest in the apartment. Rather, Mustafa acted as the father figure to Ms. Allen's daughter, Mr. Mustafa and Ms. Allen had a child together, moved to Virginia together, and set up their household in the apartment. Prior to his incarceration, Mr. Mustafa had free access to the apartment, and after his incarceration Mr. Mustafa continued to store numerous items in the household.

Standing to assert a Fourth Amendment claim depends upon whether the plaintiff has a legitimate expectation of privacy in the area searched. *Minnesota v. Olsen*, 495 U.S. 91, 95 (1990). At this juncture, Mr. Mustafa has pled sufficient facts to indicate he had a reasonable expectation of privacy in the premises at 200 King Arthur's Way #204 at the time of the activities alleged in the complaint. *Compare United States v. Stevenson*, 396 F.3d 538, 547-48 (4th Cir. 2005), *with United States v. Robinson*, 430 F.2d 1141, 1143 (6th Cir. 1970) (rejecting

government's contention that defendant no longer retained a legitimate expectation of privacy in his residence after he was incarcerated); *see also United States v. Paradis*, 351 F.3d 21, 27 (1st Cir. 2003); *United States v. Davis*, 932 F.2d 752, 756-57 (9th Cir. 1991) (concluding former tenant who retained key, had free access and stored items in residence had a reasonable expectation of privacy).

## 2. The Particularity Requirement

"The Fourth Amendment requires that a search warrant describe the items to be seized with sufficient particularity to prevent a 'general, exploratory rummaging.'" *United States v. Oloyede*, 982 F.2d 133, 138 (4th Cir. 1992) (*quoting Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971)). Nevertheless,

> the test for the necessary particularity is a pragmatic one: "The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved . . . [T]here is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized."

*United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979) (alteration and omission in original) (*quoting United States v. Davis*, 542 F.2d 743, 745 (8th Cir. 1976)). Thus, "a warrant need not—and in most cases, cannot—scrupulously list and delineate each and every item to be seized." *United States v. Phillips,* 588 F.3d 218, 225 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1564 (2010). "'An affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant.'" *United States v. Washington*, 852 F.2d 803, 805 (4th Cir. 1988) (*quoting Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987)).

Here, the search warrant and affidavit reflect that Mr. Mustafa was under investigation for possession of stolen property, credit card theft, credit card fraud, and grand larceny. (Defs.'

Mem. Supp. Mot. Dismiss Ex. A. ("Affidavit"), Ex. B ("Search Warrant") (Docket No. 30).) In

the affidavit attached to the search warrant, Detective Hunnicutt swears: "Detectives of the

Fredericksburg Police Department and the Spotsylvania County Sheriff's Office are currently

investigating separate incidents in which Mr. Mustafa broke into vehicles and stole electronic

equipment, cameras, credits cards and clothing. Some of the stolen credit cards were used at

stores in the Fredericksburg area." (Affidavit 1.) The items sought in the search warrant largely

track the items that were alleged to be the objects of Mr. Mustafa's illicit activity: "clothing,

jewelry, electronic equipment, credit cards, cameras, suitcases, [and] briefcases." (Search

Warrant.) *See In re Grand Jury Subpoena*, 920 F.2d 235, 239-40 (4th Cir. 1990) (concluding

that "descriptions were sufficiently particularized considering the wide-ranging nature of the

criminal activities under investigation"). Plaintiffs' claim that the search warrant failed to satisfy

the Fourth Amendment's particularity requirement lacks merit. Accordingly, Claim 1(a) will be

DISMISSED.

### 3.    Carter and Hunnicutt's Presence in the Residence After Ms. Allen Asked Them to Leave and Before They Obtained a Search Warrant

Although Ms. Allen initially voluntarily admitted Carter to the residence, according to

Plaintiffs, "[Ms.] Allen explicitly asked defendant Carter to leave while waiting for the search

warrant to arrive. . . . Defendant Hunnicutt's arrival aggravated this illegal detention and

seizure." (Am. Compl. 9.) "It is . . . well-established that the police may not invade a person's

house without a warrant except under very limited circumstances, such as the presence of exigent

circumstances or an occupant's consent." *United States v. McMullin*, 576 F.3d 810, 814 (8th Cir.

2009). For example, "[c]ourts have recognized that when officers have probable cause to

believe that contraband is present and, in addition, they reasonably believe that the evidence may

19

be destroyed or removed before they can secure a search warrant, a warrantless entry is justified." *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981) (citing cases). In deciding whether exigent circumstances exist, courts generally look to the following factors:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

*United States v. Reed*, 935 F.2d 641, 642 (4th Cir. 1991) (*quoting Turner*, 650 F.2d at 528). "Nevertheless, police officers may not manufacture an exigency or unreasonably and deliberately delay obtaining a warrant." *DeMayo v. Nugent*, 517 F.3d 11, 16 (1st Cir. 2008) (citing cases); *United States v. Collazo*, 732 F.2d 1200, 1204 (4th Cir. 1984) ("The government will not be allowed to plead its own lack of preparation to create an exigency justifying warrantless entry.").

Here, Defendants contend that it was reasonable for them to remain on the premises because "[Ms.] Allen may have removed the items sought from the property prior to the arrival of the warrant otherwise." (Defs.'s Mem. Supp. Mot. Dismiss 20.) The record, however, plausibly suggests that Tucker and Hunnicutt "created the 'exigency' themselves for no apparent reason" and thus might be "foreclosed from relying on it to dispense with the warrant requirement." *United States v. Mowatt*, 513 F.3d 395, 403 (4th Cir. 2008). Defendants have not addressed this issue. Nor have they adequately addressed why, in light of the foregoing authority, they would be entitled to qualified immunity at this juncture.[5] Accordingly, Ms. Allen

---

[5] In order to properly place the defense of qualified immunity before the Court a defendant:

> must: (1) identify the specific right allegedly violated; (2) brief, with full pinpoint citation to authority, whether the right was so clearly established as to put a

has adequately stated a claim that her rights under the Fourth Amendment right were violated by the presence of Hunnicutt and Carter in the residence after she asked Carter to leave and before the warrant arrived. *Manzanares v. Higdon*, 575 F.3d 1135, 1147 (10th Cir. 2009) (holding that police violated homeowner's "clearly established constitutional rights by remaining in his home after consent was withdrawn"); *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 426-27 (5th Cir. 2008); *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999) (observing that when occupant withdrew consent, "the officers should have promptly departed the premises"). Accordingly, Defendants' Motions to Dismiss Claim 1(b) will be DENIED.

In order to establish a civil conspiracy under § 1983, Plaintiffs must allege facts that indicate Hunnicutt and Carter "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (*citing Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). In this regard, Plaintiffs must allege facts that plausibly suggest "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (*quoting Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989)). Hunnicutt and Carter contend that Plaintiffs have failed to plead sufficient facts to establish the requisite meeting of the minds. Defendants do not direct the Court to authority that persuasively supports the proposition that the allegations here are inadequate. The allegations of the amended complaint, including the

---

reasonable official on notice of his legal obligations; and (3) describe to the Court the factual scenario supporting the assertion that a reasonable official in Defendant's situation would have believed his conduct was lawful.

*Hogge v. Stephens*, No. 3:09CV582, 2010 WL 3834849, at *7 (E.D. Va. Sept. 24, 2010) (*citing Collinson v. Gott,* 895 F.2d 994, 998 (4th Cir. 1990)). Defendants are free to raise the issue of qualified immunity in a motion for summary judgment.

feigned phone call, plausibly indicate that Hunnicutt and Carter coordinated the search of

Plaintiffs' residence ahead of time. The facts also suggest that Hunnicutt and Carter had tacitly

agreed that if they could not obtain Ms. Allen's consent and cooperation, they would remain in

the residence until they obtained a search warrant. "[T]he allegations of the complaint,

considered together and liberally construed, 'reasonably lead to the inference that [the

defendants] positively or tacitly came to a mutual understanding to try to accomplish a common

and unlawful plan." *McDaniel v. Maryland*, No. RDB-10-00189, 2010 WL 3260007, at *12

(D. Md. Aug. 18, 2010) (second alteration in original) (*quoting Hinkle*, 81 F.3d at 421)).

Accordingly, Defendants' Motions to Dismiss Claim 4 on the grounds that Plaintiffs have not

pled sufficient facts to establish a meeting of the minds will be DENIED.

Lastly, Defendants contend that Ms. Allen and Mr. Mustafa's claims fail to satisfy the

requirement for permissive joinder. *See* Fed. R. Civ. P. 20(a). The pertinent rule provides:

> **(1) *Plaintiffs.*** Persons may join in one action as plaintiffs if:
> (A) they assert any right to relief jointly, severally, or in the alternative
> with respect to or arising out of the same transaction, occurrence, or series
> of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the
> action.

*Id.* Plaintiffs remaining claims for relief, 1(b) and 4, satisfy the foregoing requirements.

Accordingly, Defendants' Motions to Dismiss on the grounds that the Plaintiffs are improperly

joined will be DENIED.

## V. Plaintiffs' Motion for Partial Summary Judgment

The Court's Local Rules require that "[a]ll motions, unless otherwise directed by the

Court . . . shall be accompanied by a written brief setting forth a concise statement of the facts

and supporting reasons, *along with a citation of the authorities upon which the movant relies.*"

E.D. Va. Loc. Civ. R. 7(F)(1) (emphasis added). Furthermore, "[e]ach brief in support of a

motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed." E.D. Va. Loc. Civ. R. 56(B). Plaintiffs' Motion for Partial Summary Judgment does not comply with either of the above requirements. Moreover, Plaintiffs seek judgment with respect to the loss and deprivation of personal property that was the subject of Claim 2(c) which the Court has dismissed. Accordingly, Plaintiffs' Motion for Partial Summary Judgment (Docket No. 50) will be DENIED.

An appropriate Order shall issue.

Dated: February 20, 2011
Richmond, Virginia

/s/
Robert E. Payne