IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CHERYL L. ALLEN, et al.,**

    Plaintiffs,

v.                                          Civil Action No. **3:09CV63**

**CITY OF FREDERICKSBURG, et al.,**

    Defendants.

**MEMORANDUM OPINION**

Cheryl L. Allen and Rashid A. Mustafa, proceeding pro se, filed this action under 42 U.S.C. § 1983. Ms. Allen and Mr. Mustafa (collectively "Plaintiffs") allege, inter alia, that their constitutional rights were violated during an intrusion into Ms. Allen's home in 2007.[1] By Memorandum Opinion and Order entered on February 22, 2011, the Court dismissed all of Plaintiffs' claims except for the following two claims:

Claim 1   Violations of Plaintiffs' rights under the Fourth Amendment:[2]
           (b) Carter violated Ms. Allen's rights when she demanded that Carter secure a search warrant. "Carter's presence in the plaint[i]ffs['] residence after such a demand constitutes an unlawful act." (Am. Compl. 9.)[3]

---

[1] The two remaining defendants are Robert Wayne Hunnicutt, a detective with the Fredericksburg Police Department, and G. Carter, a deputy with the Spotsylvania Sheriff's Department.

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[3] Because the Amended Complaint is not consistently numbered, the Court employs the page numbers assigned to the Amended Complaint by the Court's CM/ECF docketing system.

Claim 4   "Plaintiffs claim that the actions of defendants Hunnicutt and Carter constitute the act of conspiracy . . . ."  (Id. at 11.)  Specifically, Hunnicutt and Carter agreed that if they could not obtain Ms. Allen's consent and cooperation, they would remain in the residence until they obtained a search warrant. See Allen v City of Fredericksburg, No. 3:09CV63, 2011 WL 782039, at *12 (E.D. Va. Feb. 22, 2011).

The matter is before the Court on the Motions for Summary Judgment filed by Hunnicutt and Carter (collectively "Defendants") and Plaintiffs' responses thereto.

## I. STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  Id. at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id.

(quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Nevertheless, "[f]anciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." Local Union 7107 v. Clinchfield Coal Co., 124 F.3d 639, 640 (4th Cir. 1997) (citing Sylvia Development Corp. v. Calvert County, 48 F.3d 810, 817-818 (4th Cir. 1995)). Lastly, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The Court need consider only cited materials, but it may consider other materials in the record.").

Defendants submitted affidavits and copies of police records in support of their Motions for Summary Judgment. Plaintiffs have opposed the Motions for Summary Judgment with their own sworn statements. In light of the foregoing submissions and principles, the following facts are established for purposes of the motion for summary judgment.

3

## II. SUMMARY OF PERTINENT FACTS

### A. Background on the Criminal Investigation

In January of 2007, Deputy Carter was investigating car break-ins and illegal credit card use that had occurred in the Spotsylvania area. (Carter's Br. Supp. Mot. Summ. J. Ex. 1 ("Carter Aff.") ¶ 2.) Deputy Carter prepared an investigative flyer asking anyone with information related to the crimes to contact him. (Id. ¶ 3.) On or about January 25, 2007, Deputy Carter received a call from the police in Ohio where Mr. Mustafa had been arrested on November 4, 2006. (Id. ¶ 4; Pls.' Mem. Opp'n Mot. Summ. J. Mustafa Aff. ¶ 1.) A search of the vehicle Mr. Mustafa had been driving at the time of his arrest, which was registered to Ms. Allen, had yielded a gun. (Carter Aff. ¶ 4.) The serial number of the gun matched the serial number of a gun that had been stolen in one of the car break-ins Deputy Carter was investigating. (Id. ¶ 5.) "Ohio authorities sent [Deputy Carter] a picture of Mustafa which appeared to match a video still of an individual leaving a Wal-Mart after using a stolen credit card." (Carter Aff. ¶ 5.) Carter updated his investigative flyer with the picture of Mr. Mustafa sent by the Ohio authorities and the fact of Mr. Mustafa's arrest in Ohio. (Carter Aff. Ex. A.) On January 26, 2007, Deputy Carter obtained two warrants for the arrest of Mr. Mustafa for grand larceny and possession of a firearm by a convicted felon. (Carter Aff. ¶ 6.)

Around this same time, Detective Hunnicutt also had "been attempting to identify an individual, who turned out to be Mr.

4

Rashid A. Mustafa, for criminal activities that occurred in the City of Fredericksburg." (Hunnicutt's Mem. Supp. Mot. Summ. J. Ex. 1 ("Hunnicutt Aff.") ¶ 2.)[4] Sometime prior to January 30, 2007, Detective Hunnicutt received Deputy Carter's updated investigative flyer. (Carter's Br. Supp. Mot. Summ. J. Ex. 3 ¶ 3 & Ex. A.) The flyer explained that Mr. Mustafa was under investigation in Spotslyvania County for using credit cards that he had stolen from vehicles. (Carter Br. Supp. Mot. Summ. J. Ex. 3 Ex. A.) The flyer encouraged law enforcement personnel who had similar cases or pictures of Mr. Mustafa to contact Carter. (Id.)

**B. Carter's Initial Arrival at Allen's Residence**

On January 30, 2007, Deputy Carter and Detective Earl Swift went to Ms. Allen's residence at 200 King Arthur's Way, Apartment 204 in Stafford, Virginia. (Carter Aff. ¶ 7.) Detective Swift and Deputy Carter asked Ms. Allen if they could come in and ask her some questions. (Pls.' Mem. Opp'n Mot. Summ. J. Allen Aff. ("Allen Aff.") ¶ 6.) Deputy Carter explained that they knew Mr. Mustafa was her boyfriend, that he was in custody in Ohio, and that he had been driving her car. (Id. ¶ 7.) Deputy Carter asked Ms. Allen whether Mr. Mustafa had brought any items into their apartment prior to his arrest. (Carter Aff. ¶ 8.) Deputy Carter asked Ms. Allen "if [she] would mind if they 'look around?'" (Allen Aff. ¶ 8.) Ms. Allen responded, "'No!'" (Id.) Deputy Carter stated that

---

[4] Mr. Mustafa asserts that in December of 2006, a detective in Ohio told him that a detective from Fredericksburg and another detective from Spotsylvania had separately requested a copy of Mr. Mustafa's photo. (Mustafa Aff. ¶ 6.)

5

he could obtain a search warrant in a matter of minutes. (Id.) Ms. Allen "told him, 'Get the search warrant then!'" (Id.) Plaintiffs' and Defendants' accounts of what happened next diverge.

### C. Defendants' Version of Events While Waiting for the Search Warrant

According to Carter and Swift, as they were preparing to leave the apartment, Carter received a phone call from Detective Hunnicutt. (Carter Aff. ¶ 9; Carter's Br. Supp. Mot. Summ. J. Ex. 2 ("Swift Aff.") ¶ 4.) Detective Hunnicutt "called pursuant to [Deputy Carter's] investigative flyer to find out if [Carter] had any information regarding . . . Mustafa that might help him in a related investigation in the City of Fredericksburg." (Carter Aff. ¶ 9.) When Deputy Carter explained that he was at Ms. Allen's apartment and that she had not given consent to a search of the apartment, Detective Hunnicutt said he would obtain a search warrant and come to the apartment shortly. (Id.) Detective Hunnicutt "asked for the description and location of the apartment complex and [Deputy Carter] gave it to him." (Id.)[5]

After the phone call, Deputy Carter told Ms. Allen about the impending search warrant. (Id.) Detective Swift and Deputy Allen then "promptly left the apartment." (Id.) As they were leaving the apartment, Ms. Allen asked if she had to stay in the apartment.

---

[5] In the Amended Complaint, Plaintiffs suggested the phone conversation was feigned or preplanned. Detective Hunnicutt swears, "My phone conversation with Detective Carter was real; it was not feigned, and it was not preplanned. Both he and I happened to be investigating Mr. Mustafa for separate crimes in our respective jurisdictions." (Hunnicutt Aff. ¶ 5.)

(Swift Aff. ¶ 5.) Detective Swift told her that she did not have to stay in the apartment. (Id.)

Deputy Carter and Detective Swift then waited outside of the apartment on the second floor breezeway for Detective Hunnicutt to arrive. (Id. ¶ 6.) Shortly thereafter, Sergeant Alex S. Smith ("Sergeant Smith") from Stafford County arrived to serve the search warrant. (Id.) When Sergeant Smith arrived, he was met downstairs in the parking lot of the apartment building by Deputy Carter and Detective Swift. (Carter's Br. Supp. Mot. Summ. J. Ex. 4 ("Smith Aff.") ¶ 3.) Shortly after Sergeant Smith arrived, Detective Hunnicutt appeared with the search warrant.[6] (Id.; Swift Aff. ¶ 6; Carter Aff. ¶ 13.) After Sergeant Smith served the warrant, Detective Hunnicutt, Deputy Carter, and Detective Swift entered the apartment. (Carter Aff. ¶ 13; Swift Aff. ¶ 6.)

### D. Ms. Allen's Version of Events While Awaiting the Arrival of the Search Warrant

According to Ms. Allen, after she told Deputy Carter to get a search warrant, Deputy Carter answered his phone and said, "'Hey! I was just about to call him and here he is calling me!'" (Allen Aff. ¶ 9.) "Carter spoke into his phone saying: 'she wants us to get the search warrant.'" (Id.) Ms. Allen insists, "Carter did not give any information whatsoever about where he was at, who [she] was, nor did he give a description of anything (especially the fact that the apartment has a green door, which is listed on the search

---

[6] The magistrate signed off on the search warrant at approximately 3:30 p.m. (Hunnicutt Aff. ¶ 8.)

7

warrant.)" (Id. ¶ 10.)  "When Carter put his phone away [Ms. Allen] asked him what happens now?  He told [her,] 'We wait.'" (Id. ¶ 11.)  Ms. Allen asked Deputy Carter, "'Do you have to wait here?'" (Id.)  Deputy Carter replied, "'Yes.'" (Id.)

"About twenty (20) minutes later, a knock at the door was answered by Swift who admitted defendant Robert Wayne Hunnicutt into the apartment." (Id. ¶ 12.) "Approximately five(5) minutes or so after he was inside the apartment, Hunnicutt made a phone call from his cellphone, after which he stated: 'The warrant will be here shortly.'" (Id. ¶ 13.) "Ten(10) to [f]ifteen(15) minutes later, a second knock at the door was again answered by Swift.  A uniformed Stafford County Sheriff's Deputy entered and gave me a copy of the search warrant and affidavit and immediately left." (Id. ¶ 14.)

### E.  Defendants' Evidence that They Did Not Engage in a Conspiracy to Violate Plaintiff's Fourth Amendment Rights

Detective Hunnicutt swears that he "did not know and had no reason to know that Detective Carter was at Allen's residence when [he] decided to call him because Detective Carter did not tell [him] that he was going to the apartment in advance." (Hunnicutt Aff. ¶ 6; see Carter Aff. ¶ 11.)  Prior to the phone call Deputy Carter received from Detective Hunnicutt at Ms. Allen's residence, Detective Hunnicutt and Deputy Carter "had never communicated [with each other] regarding Mr. Mustafa or Ms. Allen." (Hunnicutt Aff. ¶ 7; see Carter Aff. ¶ 10.)  Detective Hunnicutt avers:

> At no point in time during the investigation of Mr. Mustafa did [he] act jointly with Detective Carter to

8

> effect an unlawful conspiracy or tacit agreement to violate either of plaintiffs' constitutional rights. Detective Carter and I simply searched the residence together as part of our investigation of Mr. Mustafa's criminal activity, pursuant to an executed search warrant.

(Hunnicutt Aff. ¶ 12.)

### III. ANALYSIS

#### A. Claim 1(b)—Fourth Amendment Claim Against Deputy Carter

"It is . . . well-established that the police may not invade a person's house without a warrant except under very limited circumstances, such as the presence of exigent circumstances or an occupant's consent." United States v. McMullin, 576 F.3d 810, 814 (8th Cir. 2009). Deputy Carter does not dispute that if he failed to exit Ms. Allen's apartment after she implicitly directed him to leave, he would have violated her clearly established constitutional rights.[7] See Manzanares v. Higdon, 575 F.3d 1135, 1147 (10th Cir. 2009) (holding that police violated homeowner's "clearly established constitutional rights by remaining in his home after consent was withdrawn"); Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 426-27 (5th Cir. 2008); Painter v. Robertson, 185 F.3d 557, 567 (6th Cir. 1999) (observing that when occupant withdrew consent, "the officers should have promptly departed the premises"). Deputy Carter insists that he is entitled to summary judgment with respect to Claim 1(b) because he honored Ms. Allen's Fourth Amendment rights and left the apartment after

---

[7] (Carter's Br. Supp. Mem. Summ. J. 7-8.)

being directed to do so and did not enter the apartment again until the warrant arrived. As reflected above, Ms. Allen insists that Deputy Carter remained in the apartment after she withdrew her consent and implicitly directed him to leave. Thus, there remains a dispute of material fact with respect to Claim 1(b). See Payne v. Pauley, 337 F.3d 767, 771 (7th Cir. 2003) (observing that to survive summary judgment, a plaintiff does not need to persuade the court that his or her case is convincing, only "that there is a pending dispute of material fact" (internal quotation marks omitted)). Accordingly, Deputy Carter's motion for summary judgment with respect to Claim 1(b) will be DENIED.

### B. Alleged Conspiracy to Violate Plaintiffs' Constitutional Rights—Claim 4

As pertinent here, "[t]o establish a civil conspiracy under § 1983, [Plaintiffs] must present evidence that the [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in" the deprivation of Plaintiffs' Fourth Amendment right to have Defendants vacate the apartment until they obtained a search warrant. Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996) (citing Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992)). The United States Court of Appeals for the Fourth Circuit has emphasized that plaintiffs "have a weighty burden to establish a civil rights conspiracy." Id. at 421. Here, although Plaintiffs "need not produce direct evidence of a meeting of the minds, [they] must come forward with specific circumstantial evidence that each member of

the alleged conspiracy shared the same conspiratorial objective." Id. (citing cases). This showing requires Plaintiffs to muster evidence that "at least, reasonably lead[s] to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Id.

As reflected above, Ms. Allen has mustered sufficient evidence to demonstrate that her Fourth Amendment rights were violated if Deputy Carter remained in the apartment after she implicitly asked him to leave the apartment until a search warrant was obtained. See Bell v. Johnson, No. 7:09-cv-214, 2011 WL 1226003, at *10 (W.D. Va. Mar. 30, 2011) (observing that a conspiracy claim is actionable, only to the extent that "'besides the agreement, an actual deprivation of a right secured by the Constitution'" (quoting Landriean v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980))). Plaintiffs, however, have not adduced sufficient evidence to allow a reasonable juror to conclude Defendants came to a mutual understanding to accomplish this deprivation. Hinkle, 81 F.3d at 421.

Plaintiffs insist Defendants must have conspired because they were both investigating Mr. Mustafa's crimes and had both contacted the authorities in Ohio. Defendants swear that prior to the phone call in the apartment, they had not spoken about their investigations of Mr. Mustafa. Plaintiffs suggest that Defendants' representation in this regard must be false because Deputy Carter did not give any information about where he was, yet Detective

11

Hunnicutt was able to deduce Deputy Carter's location. At best, Deputy Carter's statement upon answering his phone suggests that Deputy Carter and Detective Hunnicutt were each aware of the other's investigation of Mustafa.

Plaintiffs speculate that Defendants must have communicated prior to Deputy Carter's entry into the apartment because when Detective Hunnicutt filled out the warrant, he provided a description of the apartment, yet Ms. Allen did not hear Deputy Carter "give a description of anything (especially the fact that the apartment has a green door, which is listed on the search warrant)." (Allen Aff. ¶ 10.) The reasonable inference, however, is that Ms. Allen simply did not hear any description of the apartment Deputy Carter provided to Detective Hunnicutt.[8] See Pierce v. Burkart, Nos. 03-74250, 04-74185, 2005 WL 1862416, at *5 (E.D. Mich. Aug. 4, 2005).

Moreover, even if one were to infer that, prior to Deputy Carter's arrival at Ms. Allen's residence, Deputy Carter had provided Detective Hunnicutt with a description Ms. Allen's residence, this fact would not allow a reasonable juror to conclude that Carter and Hunnicutt had a preexisting agreement to violate Ms. Allen's right to have them vacate the apartment until a warrant

---

[8] According to Deputy Carter and Detective Swift, they received the phone call as they were about to leave the apartment. (Carter Aff. ¶ 9; Swift Aff. ¶ 4.) Ms. Allen does not provide any facts regarding her proximity to Deputy Carter during his phone conversation with Detective Hunnicutt.

12

was obtained. See Hinkle, 81 F.3d at 422; Sylvia Development Corp. v. Calvert County, 48 F.3d 810, 818 (4th Cir. 1995) (explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of reasonable probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)). There is no evidence that Ms. Allen ever instructed Detective Hunnicutt to leave her apartment or that Hunnicutt was aware that Ms. Allen had directed Deputy Carter to leave her apartment.[9] Under Plaintiffs' theory, prior to Deputy Carter's arrival at the apartment, Detective Hunnicutt already had a full description of the apartment and sufficient facts to establish probable cause to search the apartment. Plaintiffs fail to suggest what advantage Defendants hoped to gain through the elaborate charade they speculate was conducted by Defendants. See Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003) (rejecting as rank speculation plaintiff's claim officer planted drugs where he failed to direct the Court to facts that suggested officer had any motive to plant the drugs). Plaintiffs simply fail to introduce any evidence of sufficient heft for a reasonable juror to conclude, at

---

[9] While Detective Hunnicutt knew he needed to obtain a warrant, he also knew that Deputy Carter believed Ms. Allen was "going to cooperate." (Am. Compl. 2.)

13

the time of the phone call, that Detective Hunnicutt and Deputy Carter had come to a mutual understanding to ignore any request by Ms. Allen to vacate the apartment until a warrant was obtained. Accordingly, Claim 4 will be DISMISSED.

Detective Hunnicutt's Motion for Summary Judgment (Docket No. 63) will be GRANTED. Deputy Carter's Motion for Summary Judgment (Docket No. 60) will be GRANTED IN PART AND DENIED IN PART.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion to Plaintiffs and counsel of record.

An appropriate Order shall issue.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: November 9, 2011
Richmond, Virginia

14